382 So.2d 929 (1980)
In the Matter of an Offense Under Investigation, In re ROZAS GIBSON PHARMACY OF EUNICE, INC.
No. 65924.
Supreme Court of Louisiana.
April 7, 1980.
William J. Guste, Jr., Atty. Gen., John L. A. Lenfant, IV, David C. Forrester, Asst. Attys. Gen., for relator.
Richard Olsen, New Orleans, for respondents.
CALOGERO, Justice.[*]
In furtherance of an investigation conducted by the Medicaid Fraud Control Unit of his office the Attorney General of Louisiana caused to be issued as per Article 66 of the Code of Criminal Procedure two subpoenas duces tecum ordering S. Paul Rozas, as owner of Rozas' Pharmacy, and S. Paul Rozas, as president of Rozas' Gibson Pharmacy of Eunice, Inc., to produce certain computer logs and Medicaid computer forms of the Rozas' Gibson Pharmacy.
Counsel for Mr. Rozas and for the corporation filed an "exception to writ of subpoena duces tecum" alleging that the forcible surrender or production of the documents sought would compel him to abandon his privilege against self-incrimination. The trial judge sustained the exception and quashed the two subpoenas in question.
We granted writs upon application of the state to review this ruling of the trial court.
Attached to the state's motion for issuance of a subpoena duces tecum was an affidavit by an investigator from the Attorney General's office which stated:

*930 "On Tuesday, June 19, 1979, while checking the drug room at the Nursing Home of Eunice, located in Eunice, Louisiana, Affiant and Investigator Byron I. Davidson, Jr., discovered approximately fifty prescription vials bearing Rozas Gibson Pharmacy labels which displayed a brand name drug but contained what appeared to be a generic substance. A generic drug is chemically equivalent to a brand name drug but is substantially cheaper.
"Samples of the questionable drugs were taken and consent forms releasing the samples and their respective containers were obtained from Doris J. Dupuis, Administrator of the Nursing Home of Eunice.
"On Friday, July 13, 1979, Affiant met with Brent McArthur, Pharmaceutical Consultant for the Attorney General's Office, Medicaid Fraud Control Unit, who substantiated by inspection that forty-two of the drug samples seized from the Nursing Home of Eunice were generic substitutes.
"Upon review by Affiant of the patient's medical charts who received generic drugs from Rozas Gibson Pharmacy, it was discovered that the physicians of the patients had prescribed, on each occasion, the brand name drug and not the generic substitutes which was (sic) dispensed.
"A review of the records from the State's Medicaid Program supplied by the Louisiana Department of Health and Human Resources, on the fifty questionable prescription vials, revealed that Rozas Gibson Pharmacy #1, billed the State Medicaid Program for the brand name drug while dispensing the cheaper generic substitutes, and was subsequently reimbursed by the State's Medicaid Program for the cost of dispensing the brand name drug.
". . .
"In addition, a comparison of patients' medical history profiles supplied by the Department of Health and Human Resources to medication records maintained by the Nursing Home of Eunice have revealed that Rozas Gibson Pharmacy # 1, billed for quantities of medication in excess of that actually dispensed to the patients at the Nursing Home of Eunice."
Shortly after the initiation of this investigation, the state learned that Rozas Pharmacy utilized a computer system to maintain a record of the pharmacy's prescription business and to bill the State of Louisiana for medicaid prescriptions which the pharmacy filled. Pursuant to its investigation the state obtained a subpoena duces tecum which directed Mr. Rozas to produce an assortment of documents including prescriptions, patient profile cards for Medicaid customers, computer claims forms submitted to Medicaid, and any and all computer software, including but not limited to computer programs.
When the state was dissatisfied with the return on this subpoena the state filed a second "motion for subpoena duces tecum" on August 16, 1979, requesting production of the following:
"1. Any and all computer generated daily logs, listing detailed information regarding each prescription entered into the computer on a daily basis, from March 1, 1978 to August 1, 1979,
"2. Any and all Medicaid computer claim forms printed, but not submitted to the Medicaid Program from March 1, 1978, to August 1, 1979."
Later discovery of the pharmacy's corporate status resulted in the filing of an identical motion on August 28, 1979, directed to Rozas Gibson Pharmacy of Eunice, Inc., through its president, S. Paul Rozas. Exceptions to both of these latter subpoenas (one to Rozas personally and the other to Rozas as a representative of the corporation) were filed by Mr. Rozas on August 28 and September 18, 1979. At a hearing on these exceptions the trial court quashed the two subpoenas in question on the grounds that these subpoenas violated Mr. Rozas' Fifth Amendment rights.
The state contends that the trial court erred in quashing the two subpoenas duces tecum for the following reasons: (1) a corporation and a corporate officer acting as a *931 representative of the corporation cannot claim the Fifth Amendment privilege against self-incrimination; (2) The evidence sought herein by the two subpoenas is neither testimonial nor communicative; (3) Mr. Rozas has no reasonable expectation of privacy with respect to the prescription records of the Rozas Gibson Pharmacy.
The issue thus raised presents for our consideration a number of possible questions pertaining to the privilege against self-incrimination relating to both S. Paul Rozas and Rozas Gibson Pharmacy of Eunice, Inc.
Relative to Paul Rozas personally, are the entries made by him on the Pharmacy's computer and the writings on the unsubmitted medicaid forms in effect testimony or communications which are protected by the privilege against self-incrimination?[1] Does Rozas have a reasonable expectation of privacy in the business records requested?[2] Can Rozas as distinguished from his lawyer or accountant be required to bring the records to court in response to a subpoena duces tecum?[3] Would compelling Rozas to produce the requested material constitute giving evidence against himself in violation of Article I, Section 16 of the Louisiana Constitution which reads in pertinent part: "No person shall be compelled to give evidence against himself?" Notwithstanding the answers to the foregoing questions, has Rozas personally waived any privilege against self-incrimination by entering a regulated pharmacy business and/or by participating in a federal program which requires participants to keep records of services provided and to disclose those records upon request?[4]
Relative to Rozas' Gibson Pharmacy of Eunice, Inc., through its representative and president S. Paul Rozas, may such business corporation through its president claim a privilege against self-incrimination under the federal or state constitutions?[5] Assuming that a corporation or a corporate officer can claim the privilege under the Louisiana Constitution, are the subpoenaed records testimony or communications or protected as per Article I, § 16 La.Const. of 1974, by the proscription against giving evidence *932 against oneself?[6] Does a corporation or a corporate officer have a reasonable expectation of privacy in business records of the corporation? Has the corporation as a regulated business under state law and/or as a voluntary participant in a federal program foregone any reasonable expectation of privacy?[7]
These are interesting and in some instances perhaps troubling questions. However, our resolution of the case before us does not require that all of them be answered. We will limit our discussion here to such matters as will facilitate our deciding the case before us.
Under the circumstances present here Rozas' Gibson Pharmacy of Eunice, Inc. can through its president S. Paul Rozas be required to produce the subpoenaed records (computer generated daily logs and Medicaid computer claim forms) and such production of these documents does not violate any constitutional privilege against self-incrimination of either the corporation or Mr. Rozas under the United States or Louisiana Constitutions. The privilege which Rozas may personally enjoy, if any, is essentially irrelevant to the corporation's obligation through its proper representatives to produce these documents.
Rozas' Gibson Pharmacy of Eunice, Inc., entered the regulated business of dispensing prescription drugs.[8] Although the fact that respondent is engaged in a regulated business may not give the state license to inspect all records of the corporation, in this instance the corporation, through its president S. Paul Rozas, as a pre-condition to participating in the state title XIX program under medicare, signed a medicaid provider agreement which obligated the corporation to keep records of service provided medicaid patients and to disclose those records to the state.[9] Each medicaid claim form submitted by Rozas Pharmacy to the state for reimbursement contained the following certification statement:
"I certify that the service listed has been rendered by a legally qualified person, that the charge is within the department's prescription pricing regulations and the payment has not been received. I agree to adhere to the published regulations concerning pharmaceutical payments. I hereby agree to keep such records as are necessary to disclose fully the extent of services provided to individuals under the state's title XIX plan and to furnish information regarding any payments claimed for providing such services as the state agency may request for three years from date of service." (Emphasis provided)
*933 Pretermitting the question of whether the Rozas' Gibson Pharmacy of Eunice, Inc. is a "person" capable of claiming Louisiana's privilege against giving evidence against oneself, this corporation could have no reasonable expectation of privacy as to the computer logs and other records which reveal the extent of service provided medicaid patients. Rozas Pharmacy understood when it began participating in the state medicaid program that records of prescriptions filled for medicaid patients would have to be kept, that the state might inspect those records, and that the state had a right to inspect those records under the medicaid provider agreement signed by Rozas Pharmacy.
Rozas Pharmacy argues that the agreement cited above should be narrowly construed and that the original prescriptions written by the patients' doctors and filed by Rozas are the only records required by the medicaid provider agreement. Respondent's position is without merit. The state is not investigating the validity of the prescriptions written by the doctors. The state wants to examine respondent's records to learn whether Rozas Pharmacy has charged the state brand name prices for generic substitutes. The records the state seeks to review, those necessary to disclose fully the extent of medicaid services provided, are what have been subpoenaed by the state.
Nor is there merit to respondent's contention that R.S. 13:3734(B)[10] prevents the disclosure of respondent's prescription records of non-medicaid patients contained on the computer logs unless those patients agree to disclose those records. That statute, R.S. 13:3734(B), provides for a "health care provider" privilege. It is not applicable here. The statute on its face is applicable only in civil cases, proceedings before a medical review panel and in medical and dental arbitration proceedings. Furthermore, under the express terms of the statute the nondisclosure privilege belongs to the patient rather than to the health care provider: ". . . a patient or his authorized representative, has a privilege to refuse to disclose . . ." R.S. 13:3734(B). (Emphasis provided) Rozas Pharmacy therefore cannot be heard to complain.
Inasmuch as our reversing the trial court's ruling quashing the subpoena duces tecum directed to S. Paul Rozas, as president of Rozas' Gibson Pharmacy of Eunice, Inc. will facilitate the state's securing production of the records sought, it is unnecessary to review the trial court's ruling quashing the subpoena duces tecum directed to S. Paul Rozas personally.

Decree
For the foregoing reasons the judgment of the trial court quashing the August 28, 1979 subpoena directed to S. Paul Rozas, president of Rozas' Gibson Pharmacy of Eunice, Inc., is reversed and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[*] Chief Judge Paul B. Landry, retired, participated in this decision as an Associate Justice Ad Hoc.
[1] Bearing on this issue are such cases as: Schmerber v. California, 384 U.S. 757, 763-764, 16 L.Ed.2d 908 (1966)compelling a defendant to give blood samples does not violate the Fifth Amendment because no testimonial or communicative evidence is involved. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886)business papers of a partnership, like more intimate writings are protected by the Fifth Amendment privilege. Fischer v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)a lawyer's production of his client's tax records in his possession did not compel the taxpayer to be a witness against himself. Couch v. United States, 409 U.S. 22, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973)a summons served on a taxpayer's accountant requiring the accountant to produce the taxpayer's records in his possession did not violate the taxpayer's privilege against self-incrimination.
[2] Boyd v. United States, supra; Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed. 678 (1974)a partner in a three man law firm has no reasonable expectation of privacy in his business records because they belong to the partnership.
[3] Fischer v. United States, supra; Couch v. United States, supra.
[4] In Grosso v. United States, 390 U.S. 62, 67, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968) the Supreme Court held that there are three pre-conditions for the "required records" exception to the Fifth Amendment to apply: (1) The purpose of the inquiry must be essentially regulatory, (2) the information obtained must be of a kind the regulated party has customarily kept, and (3) the records themselves must have assumed public aspects making them at least analogous to public records.
[5] Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911)the Fifth Amendment privilege may not be claimed by a corporation, and a corporate officer may not refuse to produce corporate records even if those records incriminate him. Grant v. United States, 227 U.S. 714, 33 S.Ct. 190, 57 L.Ed. 423 (1913)the sole shareholder of a dissolved corporation has no privilege against producing the records of the corporation. United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944)labor union officials may not claim the privilege when ordered to produce union records. United States v. Fleischman, 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906 (1950) officers of an unincorporated organization have no privilege with respect to the records of an unincorporated association.
[6] State v. Wilson, 329 So.2d 680 (La. 1976)the Louisiana privilege against giving evidence against oneself relates only to testimonial or communicative evidence. This Court has held in the following cases that no compulsion of testimonial or communicative evidence took place: State v. Sheppard, 350 So.2d 615 (La. 1977), giving fingerprints; State v. Anthony, 332 So.2d 214 (La. 1976), exhibiting scar on chest; State v. O'Connor, 320 So.2d 188 (La. 1975), opening cigarette pack; State v. Morgan, 333 So.2d 642 (La. 1976), wearing certain shirt; State v. Collins, 328 So.2d 674 (La. 1976), exhibiting teeth; State v. Lacoste, 256 La. 697, 237 So.2d 871 (La. 1970), uttering "hurry up;" State v. Thompson, 256 La. 934, 240 So.2d 712 (La. 1970), handwriting exemplars; State v. Dugas, 252 La. 345, 211 So.2d 285 (La. 1968), cert. den. 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691, blood sample; State v. Garon, 161 La. 867, 109 So. 530 (La. 1926), placing shoe in track.
[7] Cf. Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), L. Mayers, Shall We Repeal the Fifth Amendment, (1959), 38 Ohio State Law Journal 351 (1977).
[8] See R.S. 37:1171 et seq. for state regulations relating to the operation of a pharmacy.
[9] Medicaid provider agreements are required by 42 C.F.R. 431.107 (1978):

"(a) Basis and purpose. This section implements section 1902(a)(27) of the Act, which requires agreements between medicaid agencies and providers.
"(b) Agreements. A state plan must provide for an agreement between the medicaid agency and each provider furnishing services under the plan in which the provider agrees to
(1) Keep any records necessary to disclose the extent of services the provider furnishes to recipients; and;
(2) Furnish the agency or the Secretary with any information they may request regarding payments claimed by the provider for furnishing services."
[10] R.S. 13:3734(B) provides in pertinent part:

"Except as hereinafter provided, in civil cases, proceedings before a medical review panel, pursuant to R.S. 40:1299.47 and in medical and dental arbitration proceedings, pursuant to R.S. 9:4230-4236, and in proceedings and investigation preliminary to all such actions, a patient or his authorized representative has a privilege to refuse to disclose and to prevent a health care provider from disclosing any communication, wherever made, relating to any fact, statement or opinion which was necessary to enable that health care provider or any other health care provider to diagnose, treat, prescribe or act for the patient."