397 So.2d 1301 (1981)
In the Matter of An Offense Under Investigation, in re: MORRIS THRIFT PHARMACY.
(State of Louisiana
v.
Aaron B. Morris.)
No. 80-K-2609.
Supreme Court of Louisiana.
April 6, 1981.
Rehearings Denied May 18, 1981.
Frank J. Gremillion, Cyrus J. Greco, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, John L. A. Lenfant, IV, David C.
*1302 Forrester, Asst. Attys. Gen., Elizabeth V. Ward, Asst. Dist. Atty., for plaintiff-respondent.
WATSON, Justice.[*]
Aaron B. Morris, the owner-operator of Morris Thrift Pharmacy, contends that a subpoena of his pharmaceutical records by the Attorney General of Louisiana should be quashed. A motion to quash the subpoena was denied by the trial court. It is argued that the attorney general has exceeded his constitutional authority and that the documents will make Morris a witness against himself in violation of the Fifth Amendment to the United States Constitution.[1] A writ of review was granted to consider these two issues.

FACTS
In its motion for issuance of the subpoena, the attorney general's office alleged the following: On October 15, 1979, Electronics Data Systems (E.D.S.) conducted a routine pricing audit of Morris Thrift Pharmacy for the Department of Health and Human Resources. During the audit, an E.D.S. auditor overheard a pharmacy clerk tell a new employee that cash and credit customers were to be charged less than the dollar amount shown on their prescriptions. The auditor surmised that these customers were being given discounts which were not granted the State on welfare prescriptions.
The subpoena duces tecum ordered Morris Thrift Pharmacy through its owner-operator to produce the following records:
"1. Any and all records indicating credit or cash sales of prescription medication to customers during the period January 1, 1978, to present, including but not limited to `insurance' ledger cards, and `charge' ledger cards;
2. Any and all patient profile cards for all customers receiving medication from January 1, 1978, to present;
3. Any and all Computer, Inc., `Title XIX Claims Information Sheets' for the period January 1, 1978, to present;
4. Any and all cash register receipts documenting sales of prescriptions (sic) medication for the period January 1, 1978, to present."

ATTORNEY GENERAL'S AUTHORITY
LSA-Const.1974, Art. IV, § 8 provides, in pertinent part:
"As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of any criminal case; and (3) for cause, when authorized by the court which would have original jurisdiction and subject to judicial review, (a) to institute, prosecute, or intervene in any criminal action or proceeding, or (b) to supersede any attorney representing the state in any civil or criminal action.
"The attorney general shall exercise other powers and perform other duties authorized by this constitution or by law."
Morris maintains that this is a criminal prosecution which the attorney general has initiated without judicial authorization in violation of this section.
The restrictions of Article IV, Section 8 must be viewed in light of the corresponding provisions of the 1921 Constitution.[2] *1303 The 1921 Constitution gave the attorney general broad powers, including the power to institute criminal prosecutions. The 1974 Constitution limited this authority to those instances where there was "cause" and judicial authorization.[3]
Article IV, Section 8, speaks of limitations on the attorney general's power to initiate, intervene and assist in criminal prosecutions. These sections limit the attorney general's power to prosecute but not his ability to investigate.[4]
The last paragraph of Article IV, Section 8, states: "The attorney general shall exercise other powers and perform other duties authorized by this constitution or by law." The subpoena power of the attorney general is authorized "by law" in LSA-C.Cr.P. art. 66, which provides, in pertinent part, as follows:
"Upon written motion of the attorney general or district attorney setting forth reasonable grounds therefor, the court may order the clerk to issue subpoenas directed to the persons named in the motion, ordering them to appear at a time and place designated in the order for questioning by the attorney general or district attorney respectively, concerning any offense under investigation by him. The court may also order the issuance of a subpoena duces tecum."
Article IV, Section 8 does not limit the investigatory powers of the attorney general.[5] They may be carried out as authorized by law. The activities of the attorney general in this case are properly classified as investigatory and are authorized by LSA-C. Cr.P. art. 66.

FIFTH AMENDMENT CLAIM
Morris contends that production of the documents in items (1) and (2) of the subpoena[6] will violate his right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution.[7] A similar claim was made in the Matter of Rozas Gibson Pharmacy of Eunice, Inc., 382 So.2d 929 (La., 1980), which held that the corporate owner of a pharmacy had no reasonable expectation of privacy in records of services provided to medicaid patients. Morris also has no reasonable expectation *1304 of privacy in the records which he has been ordered to produce.[8]
Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) held that a corporation could not refuse production of its books on a self-incrimination basis because it had a duty to submit its records and books to the public authority upon proper demand. This "required records" exception to the privilege against self-incrimination was expanded to include non-corporate entities in Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1947). Shapiro held that this exception also applies to personal records which are required by statute.
Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) refined the "required records" exception. There are three requirements: (1) the government's inquiry must be essentially regulatory; (2) the information must be obtained from the kind of records that the regulated party customarily keeps; and (3) the records must have assumed "public aspects." Grosso, supra, 390 U.S. 67, 68, 88 S.Ct. 713, 714. The records which Morris has been ordered to produce meet the Grosso requirements. The attorney general's investigation is concerned with regulating the state's medicaid program. The information in these records is customarily kept by Morris. Because of federal regulations and agreements signed by Morris, these records have acquired "public aspects."[9]
Morris chose to enter the regulated business of dispensing prescription drugs.[10] He voluntarily chose to participate in the Louisiana Medical Assistance Program and signed a medicaid provider agreement which required him to maintain certain records.[11] Morris signed a "Pharmaceutical Services Provider Agreement Form", which provides in part:
"I hereby agree to keep such records as are necessary to disclose fully the extent of services provided to individuals under the State's Title XIX plan and to furnish information regarding any payments claimed for providing such services as the State agency or its authorized representatives may request for three years from date of service."
The claim forms which Morris was required to fill out and sign in order to obtain payment contained statements which reiterated the language of this agreement.[12]
*1305 Even though the records sought by the state pertain to all customers, they are covered by these agreements. The regulations of the medicaid program provide that a pharmacist is to be paid the lower of (1) ingredient cost plus a dispensing fee; or (2) the provider's customary charge to the general public.[13] These regulations placed Morris on notice that he was required to maintain records regarding charges to the general public. He agreed "to furnish information" about the payments claimed for services that he provided. He has no reasonable expectation of privacy in the records he was ordered to produce; he knew that he could be required to furnish them to the Department of Health and Human Resources. The subpoena duces tecum does not violate Morris' constitutional privilege against self-incrimination.
For the foregoing reasons, the ruling of the trial court denying applicant's motion to quash the subpoena duces tecum is affirmed.
AFFIRMED.
NOTES
[*] Judges James C. Gulotta, John C. Boutall, and Patrick M. Schott of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon, and Associate Justices Calogero, Dennis and Watson.
[1] In brief, applicant indicates that he has withdrawn his objection to producing the documents sought in item (3) of the subpoena, since they are directly related to the filling of medicaid prescriptions. He also maintains that the records sought in item (4) of the subpoena, cash register receipts, were never in existence and cannot be supplied. Morris' application, therefore, is directed toward the records sought in items (1) and (2) of the subpoena duces tecum.
[2] LSA-Const.1921, Art. VII § 56 stated, in pertinent part, as follows:

"Section 56. The Attorney General and the assistants shall be learned in the law and shall have actually resided and practiced law, as duly licensed attorneys, in the State for at least five years preceding their election and appointment. They, or one of them, shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State. They shall exercise supervision over the several district attorneys throughout the State, and perform all other duties imposed by law."
[3] See Records of Louisiana Constitutional Convention of 1973; Convention Transcripts, pp. 3379-81, 3395, 3436-40.
[4] See State v. Neyrey, 341 So.2d 319 (La., 1976) and Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev. 765, at 837.
[5] Article IV, Section 8, subdivision (3) authorizes the attorney general to institute a criminal action or supersede an attorney representing the state in a civil or criminal action, "for cause, when authorized by the court...." Without power of investigation it would be impossible for the attorney general to amass the evidence to make such a showing of "cause". See Hargrave, supra, at 837.
[6] The records ordered produced in item (1) are those which indicate cash or credit sales to customers, including insurance ledger cards and charge ledger cards. Those sought in item (2) are all patient profile cards, including records of sales to non-welfare patients.
[7] U.S.C.A.Const. Amend. V provides, in pertinent part, as follows:

"No person ... shall be compelled in any criminal case to be a witness against himself...."
See Boyd v. U. S., 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); and Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). In Bellis the United States Supreme Court declared that the privilege against self-incrimination "applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life." 417 U.S. at 87-88.
[8] Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) stated:

"[T]he Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a testimonial communication that is incriminating." 425 U.S. 408, 96 S.Ct. 1579.
The state maintains that the production of records ordered here is not a compelled, incriminating, testimonial communication, and the Fifth Amendment privilege does not apply. It is unnecessary to reach this issue because Morris has no Fifth Amendment privacy interest in these records.
[9] The "required records" exception is not limited to records required by statute, but includes records required by administrative regulations. In Re Grand Jury Proceedings, 601 F.2d 162 (5 Cir. 1979).
[10] See LSA-R.S. 37:1171, et seq. for state statutes regulating the practice of pharmacy.
[11] Medicaid provider agreements are required by 42 C.F.R. 431.107 (1979) which provides in pertinent part:

"(b) Agreements. A State plan must provide for an agreement between the Medicaid agency and each provider furnishing services under the plan in which the provider agrees to:
"(1) Keep any records necessary to disclose the extent of services the provider furnishes to recipients;
"(2) On requests, furnish to the Medicaid agency, the Secretary, or the State Medicaid fraud control unit (if such a unit has been approved by the Secretary under § 455.300 of this chapter), any information maintained under paragraph (b)(1) of this section and any information regarding payments claimed by the provider for furnishing services under the plan; and
"(3) Comply with the disclosure requirements specified in Part 455, Subpart B of this chapter."
[12] Additionally, on April 30, 1980, Morris signed an agreement which allowed him to submit medicaid claims on magnetic tape. This agreement provides, in pertinent part, as follows:

"8.
"The Provider agrees to submit to the State Agency, Fiscal Intermediary or any other authorized agent, upon request, sufficient documentation to substantiate the scope and nature of services provided for those claims submitted and for which reimbursement is claimed.
* * * * * *
"11.
"Further, for a period of three (3) years, should during the course of a Federal or State audit or investigation documentation of the existence, nature and scope of the services pertaining to a medical assistance claim be requested, the Provider shall provide the documentation as requested or produce such for examination and copying."
[13] See 42 C.F.R. 447.331(a) (1979):

"The agency may not pay more for prescribed drugs than the lower of ingredient cost plus a dispensing fee or the provider's usual and customary charge to the general public."
See also, 42 C.F.R. 447.333, 447.334.