406 So.2d 195 (1981)
STATE of Louisiana
v.
Ron McDERMITT and Leslie McDermitt.
No. 81-KA-0824.
Supreme Court of Louisiana.
November 16, 1981.
*198 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John L. A. Lenfant, IV, David C. Forrester, Elizabeth V. Ward, Asst. Attys. Gen., David Caldwell, Dist. Atty., for plaintiff-appellee.
Captan Jack Wyly, Lake Providence, Herschel C. Adcock & E. Wade Shows, of Adcock, Dupree & Shows, Baton Rouge, for defendant-appellant.
CHIASSON, Justice Ad Hoc.[*]
The defendants, Ron McDermitt and Leslie McDermitt, were charged by bill of information on April 16, 1980, with thirteen counts of Medicaid fraud in violation of La.R.S. 14:70.1. The State subsequently dismissed one count. The defendants pleaded not guilty and filed motions to suppress the evidence and quash the bill of information. After the trial court overruled these motions, the defendants were tried by a six person jury who found both defendants guilty of all twelve counts in the bill of information. On January 9, 1981, the defendants were each sentenced to one year at hard labor on Count No. 1, and various suspended sentences ranging from one to five years on the remaining eleven counts. The defendants have appealed their convictions and sentences, and remain free on an appeal bond.
Most of the facts in this case appear undisputed. Both the State and defense have accepted the following version of the facts.
During a routine check of nursing homes, Thomas Cain, a financial investigator for the Louisiana Department of Justice, Medicaid Fraud Control Unit, seized drugs belonging to patients in a nursing home located in Bastrop, Louisiana. Labels on said vials identified them as having been obtained from Epps Pharmacy in Epps, Louisiana, located in West Carroll Parish. Because the appearance of the pills contained in said vials did not correspond to photos in the Physician's Desk Reference of the drugs enumerated on the labels, Mr. Cain seized said drugs and vials and transported them to Baton Rouge.
Epps Pharmacy, Inc. was a medicaid provider as a result of an agreement with the State. Claim forms were submitted by Epps Pharmacy, Inc. to Computer, Inc., which transferred the information from the claim forms onto magnetic tapes and transferred said tapes to EDS Federal in Baton Rouge, an intermediary for the State that pays the medicaid provider.
Cain obtained a history profile from EDS Federal of each medicaid recipient whose drugs had been seized from EDS Federal and found that the State had been billed for the brand name drugs listed on the labels. He then obtained confirmation from a pharmaceutical consultant that the brand name drugs listed on the label were not contained in the vials. Cain interviewed other recipients in West Carroll Parish and followed the same procedure to locate discrepancies between drugs contained in vials and those listed on the label. Cain's investigation thus revealed that the McDermitts were defrauding the Medicaid Program through their operation of Epps Pharmacy by supplying Medicaid recipients with generic drugs while billing the Medicaid Program for the higher priced brand name drugs.
Investigator Cain subsequently discovered that both McDermitts were also pharmacists at Gibson Drugs, Inc. in East Carroll Parish. Cain decided to run a computer list of Medicaid recipients that the McDermitts provided prescriptions to in East Carroll Parish. The computer run generated a list of some thirty Medicaid recipients supplied by Gibson Drugs, Inc. Letters were sent to *199 each recipient requesting them to appear at the Lake Providence Welfare Office with their drugs. Twenty-six recipients showed up. When the investigator discovered that drugs in fifteen of the recipients' vials did not correspond to the description of the drugs in the Physician's Desk Reference, they confiscated these vials and submitted the drugs therein to Baton Rouge for testing. These lists verified that the drugs in the vials were not the ones described on the label of the vials. A history profile of these prescriptions was ordered from Electronic Data Systems (EDS), a physical intermediary for this State which actually pays Medicaid claims upon presentment. The history profile revealed that EDS was billed for the higher priced drugs labeled on the vial instead of the cheaper, generic ones contained in the vial. It was discovered that Computer, Inc. was the company which presented these bills to EDS on behalf of Gibson Drugs, Inc. Twelve of the aforementioned fifteen prescriptions formed the basis for the twelve count bill of information from which the defendants were convicted on all twelve counts.
The defendants make ten arguments on eighteen assignments of error in this appeal.

ASSIGNMENTS OF ERROR NUMBERS 6 AND 12
Defense counsel argues that the trial court erred in admitting evidence concerning other alleged crimes and acts of the defendants which did not directly pertain to the offenses charged. The evidence in issue pertains to similar acts allegedly committed by the defendants in another pharmacy they operated in a different parish. Defense counsel first argues that this evidence has no independent relevance to the charges pending in East Carroll Parish because the evidence of alleged criminal acts committed in the operation of a separate business in a different parish was admitted to show defendants' criminal disposition instead of an element of the offense. Defense counsel also submits that the testimony regarding substitution of generic drugs for brand name drugs was also erroneous because it implied that this was a crime when substitution of generic drugs is not a crime. Defense counsel next contends that the State did not comply with mandatory procedural safeguards before introducing "other crimes" evidence, as required by State v. Prieur, 277 So.2d 126 (La.1973). In challenging the State's failure to adequately notify defendant of which "other crimes" the State intended to introduce, defense counsel appears to concede that the prescriptions listed in the State's notice complied with the procedural safeguards set out in State v. Prieur, supra. However, he maintains that the trial court erroneously admitted a barrage of evidence unrelated to the trial at hand, including:
numerous vials of drugs filed at Epps Pharmacy;
tape billing verification reports for Epps Pharmacy;
recipient medical history profiles in globo  Epps Pharmacy;
letter from the Executive Director of the Louisiana Board of Pharmacy;
EDS Federal Corporation remittance and state reports in globo for Epps Pharmacy.
By admission of this evidence, it is contended that the defendants were taken by surprise and were forced to defend against charges for which they were not on trial. Additionally, defense counsel maintains that the Prieur guidelines, requiring the State to affirmatively show that evidence of "other crimes" is not merely repetitive and cumulative and not a subterfuge for depicting the defendant's bad character, were not met by the State by its mere assertions to this effect. Finally, defense counsel contends that the evidence of other acts by defendants was erroneously admitted because any probative value it did have did not outweigh the risk of undue prejudice to the defendants. It is submitted that the jury gave excessive weight to the evidence of the similar acts and thereby convicted defendants irrespective of their guilt for the present charge.
*200 The State submits that the evidence pertaining to the operations of the defendants' other pharmacy outside East Carroll Parish has independent relevance to the present case in that it tends to show "intent, knowledge and system" by the defendants in defrauding the State Medicaid program. It is claimed that evidence of these other acts establishes (1) intent of the defendants to defraud the State as opposed to mere mistakes or accident; (2) knowledge of the wrongdoing because both defendants were responsible for filling the prescriptions and billing the same to the State; and (3) a system of defrauding the State Medicaid program by supplying customers with the cheaper generic drugs yet billing the State for the more expensive brand name drugs from both pharmacies during the same time period. The State submits that their written notice setting forth the aforementioned purposes for introducing this evidence; the Rx#, prescription name and generic name of each prescription the State intended to introduce as "other crimes"; and the alleged strategy employed by the defendants in their system of deception, complied fully with the procedural safeguards enumerated in State v. Prieur, supra. As to the barrage of unrelated evidence which defense counsel contends he was not notified of, the State argues that these documents only served to trace the billing of false prescriptions from their origin point to their destination in Baton Rouge. The State submits that their "other crimes" did not prejudice the defendants because this evidence did not surprise, confuse or unduly sway the jury.
Generally, evidence of criminal offenses other than the ones defendant stands trial on are inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. Prieur, supra; 1 Wigmore, Evidence § 194 (3rd Ed.); McCormick on Evidence, § 190 (Cleary Ed. 1972). However, La.R.S. 15:445 and 446 provide the following general exceptions to this exclusionary rule:
La.R.S. 15:445:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
La.R.S. 15:446:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
In State v. Prieur, supra, this Court outlined the following general procedural safeguards to be followed when the State intends to offer evidence of other criminal offenses under La.R.S. 15:445 and 446:
"(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant's testimony.
"(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
"(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
"(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered.

*201 "(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto."
In the present case, the State has substantially complied with the guidelines set forth above. The barrage of evidence which defense contends they were not notified of by the State all correlates and substantiates the entire fraudulent scheme. The contested evidence was incidental, yet necessary, to convincingly show the commission of other crimes and the defendants' connection therewith. Defendants' contention of fatal error, in the State failing to make a prerequisite showing that the other crimes evidence was not cumulative or repetitive, is without merit because such a pretrial evidentiary hearing, although preferable, is not always required. State v. Hatcher, 372 So.2d 1024 (La.1979). See State v. Walker, 394 So.2d 1181 (La.1981). (Failure to strictly comply with Prieur guidelines does not necessarily warrant reversal.)
In State v. Hatcher, supra, this Court outlined the following prerequisites to admitting evidence of other criminal offenses to prove guilt:
"In order to be admissible the extraneous offense evidence must meet several tests: (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; State v. Prieur, 277 So.2d 126 (La.1973); see also, State v. Gaines, 340 So.2d 1294, 1298 (La.1977) (concurring opinion); McCormick on Evidence, § 190, pp. 451-52 (2d ed. 1972); (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; State v. Jackson, 352 So.2d 195 (La.1977); State v. Lee, 340 So.2d 1339, 1345 (La.1977) (concurring opinion); (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. State v. Frederick, 340 So.2d 1353 (La.1976); (4) the other crimes evidence must tend to prove a material fact genuinely at issue; State v. Ledet, 345 So.2d 474 (La.1977); (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977)."
The other crimes evidence in the present case meets each of the five aforementioned tests. The commission of the other crimes was proved convincingly. The fraudulent scheme of substituting generic for brand name drugs while billing the State for the higher brand name is sufficiently unique and identical in the operation of both of defendants' pharmacies. Specific intent to defraud the Medicaid program was a genuine issue in this case and the other crimes evidence was substantially relevant in proving this intent. Finally, the probative value of these extraneous crimes outweighs any possible contention of prejudicial effect.
These assignments lack merit.

ASSIGNMENTS OF ERROR NUMBERS 1 AND 2
By these assignments defense counsel argues that the State failed to prove all the essential elements of the crime of Medicaid fraud under La.R.S. 14:70.1.
La.R.S. 14:70.1 defines the crime of medicaid fraud as follows:
"The crime of medicaid fraud is the act of any person, who, with intent to defraud the state through any medical assistance program created under the federal Social Security Act and administered by the Department of Health and Human Resources:
(1) Presents for allowance or payment any false or fraudulent claim for furnishing services or merchandise; or
(2) Knowingly submits false information for the purpose of obtaining greater *202 compensation than that to which he is legally entitled for furnishing services or merchandise; or
(3) Knowingly submits false information for the purpose of obtaining authorization for furnishing services or merchandise.
"Whoever commits the crime of Medicaid Fraud shall be imprisoned, with or without hard labor, for not more than five years, or may be fined not more than ten thousand dollars, or both."
La.R.S. 15:271 provides that "(T)he plea of not guilty throws upon the state the burden of proving beyond a reasonable doubt each element of the crime necessary to constitute the defendant's guilt."
Defense counsel contends that (1) it was not sufficiently proved that Ron McDermitt and Leslie McDermitt presented these fraudulent claims in that: the signatures on the claim information sheets were not proven to be theirs; Computer, Inc., presented these claims to the State as an agent of Gibson Drugs, Inc., not Ron or Leslie McDermitt; and Leslie McDermitt, being a mere employee, did not have the authority to present a claim to Computer, Inc.; (2) the State failed to show that the defendants had the requisite intent to defraud the medicaid program because there was no evidence that these drugs were in stock at Gibson Drugs, Inc.; and (3) proper venue was not proved because the "presentment" of fraudulent claims to the State was in East Baton Rouge Parish, and not in East Carroll Parish.
Defense counsel's argument that the State did not prove that the defendants themselves presented these fraudulent claims has no merit. Both defendants were pharmacists in Gibson Drugs, Inc. and substituted the generic drugs for the higher priced brand name drugs. Additionally, they labeled the vials with and billed the Medicaid program for the higher priced brand name drugs. The overwhelming circumstantial evidence establishes that Ron and Leslie McDermitt were both inextricably involved in the entire fraudulent scheme.
The law with regard to principals disposes of defense counsel's objections regarding the State's failing to prove that the defendants themselves presented these false claims.[1]
Defense counsel's contention that the State failed to show that defendants possessed the requisite specific intent to defraud the state is without merit. Specific intent is a state of mind and, as such, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Holmes, 388 So.2d 722 (La. 1980); State v. Williams, 383 So.2d 369 (La. 1980); State v. Procell, 365 So.2d 484 (La. 1978); State v. Elzie, 343 So.2d 712 (La. 1977). The requisite intent can easily be inferred from the overwhelming evidence of substituting generic drugs in the operation of both Gibson Drugs, Inc. and Epps Pharmacy and labeling them with brand names.
Defense counsel's contention that the State did not adequately prove proper venue is without merit. La.C.Cr.P. art. 611 provides:
"All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred."
Disregarding the untimeliness of this argument,[2] it becomes apparent that at least most of the fraudulent acts were committed *203 at defendants' place of business in East Carroll Parish.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER 5
By this assignment defense counsel argues that defendants were convicted under an invalid and unconstitutional statute. It is submitted that La.R.S. 14:70.1(1) is unconstitutionally vague in that it does not define what constitutes "presentment" and that the defendants did not have notice as to what acts constituted the offense of Medicaid fraud. Defense counsel also contends that the maximum five year term of imprisonment which may be imposed under La.R.S. 14:70.1 constitutes cruel and unusual punishment.
Men of common intelligence need not guess as to the meaning of "presents" as used in the Medicaid fraud statute. State v. Prestridge, 399 So.2d 564 (La.1981). It is clear that a defendant would have to submit or bring forward a fraudulent claim. Defendants should easily understand that submitting bills to Computer, Inc., the intermediary which transmitted the bills for eventual payment by the State, when these bills charged the more expensive brand name drugs while defendants filled the prescriptions with generic drugs, constitutes the presentment of a fraudulent claim to the State.
Defense counsel's argument that the penalty provision embodied in La.R.S. 14:70.1 is unconstitutional is also without merit.
A penalty can be deemed excessive if it is grossly disproportionate to the severity of the crime. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980). To determine whether the penalty is grossly disproportionate to the crime this Court considers the punishment and the crime in light of the harm to society caused by its commission and determines whether the penalty is so disproportionate to the crime committed as to shock our sense of justice. State v. Bonanno, supra; State v. Beavers, 382 So.2d 943 (La. 1980).
A maximum five year term of imprisonment, with no mandatory minimum sentence, is not grossly disproportionate to the crime of Medicaid fraud when viewed in light of the harm to society caused by its commission. There is a harm caused the general public by defrauding welfare programs which is not present in other crimes, such as false accounting and issuing worthless checks. It is not irrational for the legislature to set a higher range of penalties for welfare fraud.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER 3 AND 4
By these assignments defense counsel argues that the trial court erred in denying defendants' Motion to Suppress and Motion to Quash, since the institution of the proceedings against the defendants, and the evidence obtained thereby, was conducted by the Attorney General's Office in violation of Article 4, Section 8 of the 1974 Louisiana Constitution. Defense counsel submits that the complete investigation of this matter was conducted by the Attorney General's Office and that the District Attorney's March 15, 1980, written request to the Attorney General's Office for assistance as well as his signature on the bill of information were obtained solely as devices to legitimize the participation by the Attorney General's Office.
The issue has been previously disposed of by this Court in Matter of Morris Thrift Pharmacy, 397 So.2d 1301 (La.1981), in which it was stated:
"Article IV, Section 8, speaks of limitations on the attorney general's power to initiate, intervene and assist in criminal prosecutions. These sections limit the attorney general's power to prosecute but not his ability to investigate." (Footnote omitted).
Therefore, in the present case, the evidence gathered prior to the institution of the prosecution was not obtained pursuant *204 to an illegally authorized investigation. The District Attorney's letter requesting the assistance of the Attorney General's Office in prosecuting this matter is a sufficient constitutional predicate for the Attorney General's Office involvement in the prosecution of the case itself.
These assignments of error lack merit.

ASSIGNMENTS OF ERROR NUMBERS 7, 8, 9, 10, AND 13
By these assignments defense counsel argues that the trial court erred in various evidentiary rulings. The rulings pertain to the business record exception to the hearsay rule, the failure to lay a proper foundation for the admission of a letter certifying the permit and license of Gibson Drugs, Inc., the introduction of customers' information sheets in violation of an alleged pharmacist-customer privilege, the violation of the best evidence rule and the allowance in evidence of defendants' reputation in their "business community" rather than in their "residential community." The trial judge's rulings on these matters were correct and none of the contentions are substantial enough to warrant further discussion.

ASSIGNMENT OF ERROR NUMBER 14
By this assignment of error defendants complain of alleged improper comments made by the prosecutor to the jury. Defendants made no timely objection to the comments nor did they move for a mistrial. The failure to timely object or to move for a mistrial constituted a waiver of the alleged error. State v. Jones, 381 So.2d 416 (La.1980). This alleged error is therefore not properly before us for review on appeal.

ASSIGNMENT OF ERROR NUMBER 11
In this assignment of error defendants argue that the trial judge erred in not granting them a mistrial because of the comments made by the trial judge in the presence of the jury. We find that the trial judge was merely attempting to clarify a previous stipulation, but in any event, the type of comments made by the trial judge can be cured by admonishing the jury which the trial judge did do in this case. Further, the comment on the evidence was not prejudicial to defendants.

ASSIGNMENTS OF ERROR NUMBERS 15 AND 16
In these assignments of error defendants complain of alleged improper charges to the jury. The first complaint is leveled at the jury charge concerning "agent of the accused." Defendants contend that Computer, Inc. was the agent of Gibson Drugs, Inc. and not the personal agent of the defendants; that Ron McDermitt signed the power of attorney on behalf of Gibson Drugs, Inc. and not as agent for himself; that Leslie McDermitt was merely an employee of Gibson Drugs, Inc.; and that Computer, Inc. was clearly not acting as their personal agent.
Defense counsel's contention of an insufficient showing of agency to charge the jury on the law concerning "agent of the accused" is meritless. Testimony and exhibits establish that both defendants were pharmacists of Gibson Drugs, Inc., who contracted with Computer, Inc. to process their Medicaid claims for the prescriptions filled on behalf of Medicaid recipients. Under the La.R.S. 14:24 law of principals, both defendants are responsible for the acts performed by Computer, Inc. as agent of Gibson Drugs, Inc.
The second complaint is leveled at the jury charge concerning "other acts" evidence to show knowledge, system, or intent. Defense counsel contends that the trial judge erroneously charged the jury on "other acts" evidence to show knowledge, system, or intent by commenting on the evidence or recapitulating the evidence in violation of La.C.Cr.P. art. 806. The record reveals that no objection was made to this contested charge to the jury nor was the issue raised after the jury deliberated. Since defense counsel did not bring the alleged error to the attention of the trial judge at a time when the trial court could cure the alleged error, the objection is deemed waived as to this issue. State v. Mack, 403 So.2d 8 (La.1981).

*205 ASSIGNMENT OF ERROR NUMBER 17
In this assignment defense counsel argues that the trial court's refusal to allow both co-counsels to make certain portions of the closing argument to the jury denied defendants of their constitutional right to effective assistance of counsel.
The trial judge was willing to allow each counsel to argue on behalf of his own client, but she would not allow different attorneys to argue different aspects of the case. No prejudice has been shown by defendants and we find no abuse of discretion by the trial court in this ruling.

ASSIGNMENT OF ERROR NUMBER 18
In this assignment of error defendants complain of excessive sentences and of the failure of the court to comply with La.C. Cr.P. art. 894.1.
Each defendant was sentenced to a one year term of imprisonment to be served at the East Carroll Parish Prison Farm. On Count No. 2 each defendant was sentenced to five years at hard labor, running consecutively to the sentence imposed on Count No. 1. However, the sentence was suspended and defendants were placed on probation conditioned in part on community service after they are released from jail. The sentences on the remaining counts ranged from two to five years, all suspended and all running concurrently with the sentences imposed under Counts Nos. 1 and 2. The sentences are well within the statutory limits and we find no abuse of the wide discretion granted to the trial judge in the imposition of sentences. Article 1, Section 20 of the 1974 Louisiana Constitution; State v. MacDonald, 390 So.2d 1276 (La.1980); State v. Spencer, 374 So.2d 1195 (La.1979); State v. Sepulvado, 367 So.2d 762 (La.1979).
We find that the trial court substantially followed the La.C.Cr.P. art. 894.1 guidelines in sentencing the defendants. Among other factors, the trial court noted that defendants made no effort to make restitution; defendants were in need of correctional treatment; any lesser sentence would deprecate from the seriousness of the offense; the victim (State) was not compensated; the defendants were unlikely to respond solely to probationary treatment; criminal conduct might reoccur; and, although the defendants did not contemplate that their acts would cause serious harm, it did seriously harm the Medicaid program. The record affirmatively shows the trial judge did consider the guidelines and it is not necessary in this instance for the trial judge to articulate every aggravating or mitigating circumstance under La.C.Cr.P. art. 894.1. State v. Guiden, 399 So.2d 194 (La.1981).
Finding no merit in any of defendants' arguments, the convictions and sentences are affirmed.
NOTES
[*] Judges CHIASSON, EDWARDS and LEAR of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice DIXON, Justices MARCUS, BLANCHE and LEMMON.
[1] La.R.S. 14:24 provides:

"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
[2] This objection should have been urged in a Motion to Quash under La.C.Cr.P. art. 532.