ROLAND L. BELSOME, Judge.
|¶ The defendant, Derrick Woodberry, appeals his four convictions and two life sentences that he received for offenses he committed as a juvenile. Finding that the district court erred in part by sentencing the defendant to two life sentences without the possibility of parole on the aggravated rape and aggravated kidnapping convictions, we amend these sentences to delete the parole restriction. In all other respects, we affirm.

STATEMENT OF THE CASE

On August 20, 2012, the State charged the defendant by bill of indictment with the April 7, 1992, aggravated rape and aggravated kidnapping of V.M.[1] (Counts I and II), and the July 1, 1992, aggravated rape and aggravated kidnapping of E.V., (counts III and IV)-[2] The defendant pled *1085 not guilty to all charges. The trial court denied the defendant’s motions to sever the offenses, quash the | ¿indictment, and suppress the statement. However, it granted the State’s motions to introduce evidence of other crimes and to exclude a witness due to incompetency.[3]
Following a four day trial, the jury found the defendant guilty of the lesser included offenses of forcible rape and second degree kidnapping on Counts I and II, and guilty as charged on Counts III and IV. The trial court subsequently sentenced the defendant to forty years at hard labor without benefits on Counts I and II and to life without benefits on Counts III and IV, all four sentences to be served concurrently. The trial court denied the defendant’s motion for new trial,[4] and this appeal followed.

FACTS

On April 7, 1992, V.M. was raped and beaten in an old mail area at Oak Brook Village apartment complex, located at 700 Magnolia Street, in New Orleans. An officer arriving on the scene observed two black males running from the apartment complex.
In early July of the same year, E.V. was abducted, beaten and raped at gunpoint while on a date with her boyfriend at the lakefront. There were also two perpetrators involved.
1-jWhen the Combined DNA Index System (CODIS) identified the defendant as a DNA match for these crimes, in 2010 and 2012 respectively, the defendant was developed as a suspect, and charged with aggravated rapes and kidnappings of V.M. and E.V.

DISCUSSION

The defendant asserts five assignments of error relative to 1) sufficiency of the evidence; 2) his motion to sever and admission of other crimes evidence; 3) his motion to suppress statement; 4) his right to present a defense; and 5) excessive sentence. First, the defendant argues the evidence is insufficient to support his convictions [5] for the rapes and kidnappings of either V.M. or E.V.[6] He argues that the State failed to prove his identity as the perpetrator of the offenses. He also argues that the State failed to prove penetration and lack of consent as to the forcible rape, and the taking from place to *1086 place element of second degree kidnapping, both relative to V.M.
When reviewing the sufficiency of the evidence to support a conviction, this Court is controlled by the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which dictates that to affirm a conviction “the appellate court must determine that the |4evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of “proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.” State v. Shapiro, 431 So.2d 372, 378 (La.1982) (citation omitted). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817, 821 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79 (citation omitted). Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court.
State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293 (citation omitted). “[A] reviewing court is not called upon to decide whether it 15believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992) (citation omitted).
A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned.
State v. Winston, 11-1342, p. 8 (La.App. 4 Cir. 9/12/12), 100 So.3d 332, 337 (citations omitted).
In addition to proving the statutory elements of the charged offense at trial, the state is required to prove defendant’s identity as the perpetrator. State v. Draughn, 05-1825, p. 8 (La.1/17/07), 950 So.2d 583, 593. When the identity of the defendant as the perpetrator is disputed, the State must negate any reasonable probability of misidentifieation in order to satisfy its burden under Jackson v. Virginia, supra. Id., State v. Galle, 11-930, p. 31 (La.App. 4 Cir. 2/13/13), 107 So.3d 916, 935 (citation omitted).

V.M.

On Counts I and II, the defendant was convicted of the responsive verdicts of forcible rape and second degree kidnapping of V.M. At the time of the offense, forcible rape, a lesser included offense of aggravated rape, was defined by La. R.S. 14:42.1 as follows:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is *1087 deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
IrAIso at the time of the offense, second degree kidnapping was the imprisoning or forcible secreting of any person wherein the victim is physically injured or sexually abused. La. R.S. 14:44.1(A)(3) and (B)(3). To sustain a conviction for second degree kidnapping, La. R.S. 14:44.1(B)(3) requires neither movement of the victim, nor that the imprisonment exists for any minimum period of time. State v. Tabor, 07-58, p. (La.App. 1 Cir. 6/8/07), 965 So.2d 427, 434 (citation omitted).
The following evidence was submitted at trial concerning the second degree kidnapping and forcible rape of V.M on April 7, 1992 at the Oak Brook Village apartment complex located at 700 Magnolia Lane. The 911 incident recall log report reflects an aggravated rape and armed robbery with a firearm by two black perpetrators. Detective Ernest Rome testified that when responding to the rape call at the apartment complex, V.M. ran up to him, hysterical, and informed him that she had just been raped. As he arrived on the scene, he saw the two men fleeing but could not identify them; other officers pursued the suspects to no avail. Detective Bernard Enclard testified that V.M. was extremely upset and obviously suffering from a black eye and abrasions to her body. She brought him to a courtyard area, in between two buildings, where she indicated the rape took place. It was mostly dirt, but had some concrete flooring where mail boxes were formerly installed.
Dr. Mark Silady performed a sexual assault exam on V.M., and he testified that she reported to him that she had been vaginally and anally raped. He observed a “white liquid in [the victim’s] vaginal vault, which is the posterior area in the vaginal area.” At that time, V.M. had alcohol on her breath and also stated that she |7had consensual sexual intercourse at approximately 4:00 a.m. on April 7, 1992.[7] His report also notes a shower or bath on the morning of April 7,1992.
In 2010, when CODIS identified the defendant as a DNA match to the DNA obtained from V.M.’s rape kit, Sergeant Arnold Williams pursued the investigation and learned that V.M. was deceased. He took a buccal swab and a statement from the defendant, who, after viewing a picture of the victim, denied ever knowing her. The DNA from the rape kit matched the DNA taken from the defendant’s buccal swab.
Sergeant Williams testified that the victim stated that her rapist had a gold tooth with a star on it. He further stated that when he questioned the defendant in 2010, he observed a gold tooth that had some type of symbol on it. The recorded statement reflects that the defendant denied that there was a star and indicated that his tooth was broken. Witnesses for the defendant all indicated that the defendant had a solid gold tooth.
C.A., the victim’s sister, corroborated the detectives’ testimony concerning the visible injuries V.M. was suffering from on the day after the rape. C.A. also stated that her sister was dating two men at the time of the incident, but she did not recognize the defendant as one of those men.
*1088 The State also admitted other crimes evidence regarding the armed robbery, kidnapping, and rape of R.G. on July 5, 1994. R.G. testified that she was outside of her residence talking to her friend when she was approached by the defendant with a chrome revolver. He stole her money and jewelry and pushed R.G. and her friend into her friend’s vehicle. R.G.’s friend managed to escape, and the j sdefendant drove a short distance, where he vaginally raped R.G. He then drove to the uptown area and forced her to perform oral sex, sodomized her, threw her from the car, and drove away. Later that night, the police arrested the defendant in R.G.’s friend’s vehicle, and R.G. positively identified him as her attacker. She also identified him at the instant trial as her attacker. A latent, fingerprint examiner identified the defendant as the person who was previously convicted for the incident involving R.G. Sergeant Warren Keller also testified that the defendant was arrested on July 27, 1992, for the carrying of an illegal weapon. At that time, he had one upper gold tooth, but no star in it.
Though the defendant claims that the State failed to prove penetration and lack of consent, the responding officers’ testimonies coupled with Dr. Silady’s testimony regarding the vaginal and anal rape proved these elements. To the extent that the defendant claims that his identity as the rapist has not been established because V.M. had consensual sex with an unknown person, we find that the State reasonably negated any reasonable likelihood of misidentification through the DNA evidence, the testimonies of Sergeant Williams and C.A., and the other crimes evidence.
As to the second degree kidnapping, the defendant contends that the State did not prove that the victim was taken from one place to another, which is required to prove second degree kidnapping. The defendant’s contention is misplaced. The State only needed to prove that the defendant imprisoned or secreted the victim and the victim was physically injured or sexually abused. See La. R.S. 14:44.1 supra. The evidence established that the victim was both physically injured and raped by the defendant in an old mail area, which meets the elements of second degree kidnapping.

J^.V.

Relative to Counts III and IV, the defendant also challenges proof of his identity as it relates to the aggravated rape and aggravated kidnapping of E.V. At the time of the offense, aggravated rape was defined as the act of anal or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent, where such intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
La. R.S. 14:42.
Likewise, aggravated kidnapping was defined as:
the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender’s actual or apparent control:
*1089 (1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person. Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
E.V. testified as to the terrifying and cruel treatment she received from the defendant on July 1, 1992. He abducted her from the lakefront at gunpoint and forced her to drive her boyfriend’s car to a dark area behind a grocery store. The defendant had an accomplice that was following behind them in a separate vehicle. 110The defendant told the other man: “I got them.” As she was driving, he instructed her to stop looking back at the other car in the rear view mirror. While riding to the spot where the rape occurred, the defendant repeatedly struck her in the face with his fist and gun, and rifled through the glove compartment. During the rape, the defendant forced her head against the car window dislodging one of her teeth. When she resisted oral sex and vaginal intercourse, the defendant anally raped her. After the attack, the defendant removed some items from the trunk and further terrorized E.V. by asking whether he should kill her or let her go. In parting, the defendant further humiliated E.V. by instructing her to tell her boyfriend that he “f — ked her.” He left in the vehicle driven by his accomplice. E.V. described the perpetrator as having “buck teeth.”
After the rape, E.V. and her boyfriend both identified Darrin Hill as her attacker. Mr. Hill was identified as a suspect when his checkbook was recovered from E.V.’s boyfriend’s vehicle. Although she did mistakenly identify Mr. Hill as her attacker, the jury heard the uncontroverted testimony of the State’s experts that the male DNA profile developed from the biological material contained in E.V.’s rape kit proved the defendant was her assailant. Mr. Hill was excluded as a contributor. He also pled not guilty to the charges by reason of insanity.
Although the defendant claims that the victim’s identification of Darrin Hill creates reasonable doubt as to his identification as the rapist, the scientific evidence identifying the defendant established that the victim was mistaken when she identified Mr. Hill. In addition, her identification of the perpetrator as having buck teeth is not inconsistent with the defendant when considering that he acknowledged having a cracked tooth. Given these In circumstances, we find that the State negated any reasonable likelihood of misidentification with the DNA evidence.
Viewing all of the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of forcible rape and second degree kidnapping of V.M., and the aggravated rape and aggravated kidnapping of E.V. Accordingly, we find that the evidence was sufficient to support the defendant’s convictions.

MOTION TO SEVER AND OTHER CRIMES EVIDENCE

Second, the defendant argues that the trial court erred by denying his motion to sever offenses and in admitting “other crimes” evidence. He asserts that the joint trial for the 1992 incidents as well as the other crimes admissions, which served no other purpose but to portray him as a bad person, deprived him of a fair trial.
As to the severance issue, two or more offenses may be charged in the same indictment in a separate count for each *1090 offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, provided that the offense joined must be triable by the same mode of trial. La.C.Cr.P. art. 493. If it appears that a defendant is prejudiced by the join-der of offenses in an indictment or bill of information, a court may grant a severance of offenses. La.C.Cr.P. art. 495.1. A defendant bears a heavy burden of proving prejudicial joinder of offenses and must make a clear showing of prejudice. State v. Lomax, 09-1129, p. 9 (La.App. 4 Cir. 3/24/10), 35 So.3d 396, 401 (citation omitted).
|12In State v. Deruise, 98-541, p. 7 (La.4/3/01), 802 So.2d 1224, 1232, the Court discussed the standard for reviewing a trial court’s ruling on a motion to sever counts:
A motion to sever is addressed to the sound discretion of the trial court, and the court’s ruling should not be disturbed on appeal absent a showing of an abuse of discretion. Brooks, 541 So.2d at 804 (citing State v. Williams, 418 So.2d 562, 564 (La.1982)). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder of the offenses will be prejudicial, a court should consider whether: (1) the jury would be confused by the various counts; (2) the jury would be able to segregate the various charges and evidence; (3) the defendant would be confounded in presenting his various defenses; (4) the crimes charged would be used by the jury to infer a criminal disposition; and (5) especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
State v. Hugle, 11-1121, p. 15 (La.App. 4 Cir. 11/7/12), 104 So.3d 598, 611.
 When ruling on a motion to sever, a trial court must weigh the possibility of prejudice to the accused against the important considerations of economical and expedient use of judicial resources. State v. Grimes, 11-984, p. 50 (La.App. 4 Cir. 2/20/13), 109 So.3d 1007, 1035, writ denied, 13-625 (La.10/11/13), 123 So.3d 1216. In Grimes, 11-984, pp. 50-51, 109 So.3d at 1036, the defendant sought to sever counts. as to one victim from counts as to another victim. In upholding the trial court denial of a severance, this Court noted that while the offenses were essentially the same as to each victim (various counts of kidnapping, rape, and other sexual crimes), the evidence of each count was presented in a relatively simple and distinct manner that the jury could keep separate during deliberations.
Similarly, in this case, the facts of each offense were distinct, simple and uncomplicated. The State presented the evidence in an orderly and chronological order, with each investigating officer and expert documenting and distinguishing | iseach offense. There is no indication that the State’s presenting evidence of the crimes together confused the jury, especially considering that the jury returned responsive verdicts as to the rape and kidnapping ' of V.M. There is no suggestion that the defendant’s right to present a defense was hindered. Nor is there anything in the record to suggest the prosecution joined the offenses to show the defendant’s criminal propensity. There is no indication of jury hostility.
Moreover, any possibility of prejudice was mitigated by the jury instructions. The trial judge charged the jury that it was to consider only the evidence pertaining to the offenses being tried. She specified the victim of each offense and she *1091 advised the jury of the crimes charged, along with the legal definitions of the crimes and responsive verdicts and their definitions. The instructions also provided the elements for each charged offense as well as the elements for each responsive verdict. Further, even if the trial court had severed the offenses, evidence of the two kidnapping and rapes admitted at the joint trial would have been admissible as evidence of other sex crimes in the other respective trial. Under these circumstances, the trial court did not abuse its discretion in in denying the defendant’s motion to sever the offenses.
As to the admission of the other crimes evidence, the defendant maintains that he was prejudiced by the introduction of evidence of his July 17, 1992, arrest for illegal carrying of a weapon and his convictions for the incident involving R.G.
“Generally, evidence of other crimes committed by the defendant is inadmissible due to the substantial risk of grave prejudice to the defendant.” State v. McDennitt, 406 So.2d 195, 200 (La.1981) (citing State v. Prieur, 277 So.2d 126 (La.1973)). Pursuant to La. C.E. art. 404(B)(1), evidence of other crimes, wrongs or acts are generally not admissible to prove character. The article, however, 1 ^provides for exceptions to this rule, which include admission for the purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident or when the evidence relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. Another exception to the rule stated in La. C.E. art. 404(B)(1) is supplied by La. C.E. art. 412.2(A), which provides, in pertinent part:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
In order for any evidence deemed to fall within La. C.E. art. 412.2 to be admissible, it must pass the balancing test of La. C.E. art. 403, which provides: “[ajlthough relevant, evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” Article 412.2 was enacted to loosen restrictions on “other crimes” evidence, and to allow evidence of “lustful disposition” in cases involving sexual offenses. See State v. Wright, 11-141, p. 13 (La.12/6/11), 79 So.3d 309, 317, superseded, by statute;[8] State v. Hollins, 11-1435, p. 36 (La.App. 4 Cir. 8/29/13), 123 So.3d 840, 865. A trial court’s ruling will not be overturned absent an abuse of discretion. Wright, 11-141, pp. 10-11, 79 So.3d at 316 (citation omitted). This same standard | ifjis applied to rulings on the admission of other crimes evidence under La. C.E. 404(B)(1) and evidence under La. C.E. art. 412.2. Wright, supra.
*1092 In this case, the State noticed its intent to offer evidence of the defendant’s conviction for sexual battery, crime against nature and second degree kidnapping of R.G., pursuant to La. C.E. art. 412.2 and 404(B), as evidence of other crimes displaying the sexually assaultive behavior of the defendant. The State pointed out that: the crimes against R.G., like those against V.M. and E.V., occurred within one-and-a-half miles of one another; involved the defendant brandishing a gun; seizing and removing the victim to a secluded spot; and then forcing the victim to engage in anal and penile vaginal intercourse. The crimes involving R.G. were substantially similar and constituted relevant and probative evidence for the instant cases.
The testimony concerning the defendant’s July 27, 1992, arrest by Sgt. Warren Keller, Jr., for carrying a concealed weapon, was offered to show that the defendant carried a gun similar to the one used in the 1992 rapes and the fact that the defendant had a gold tooth at the time of the arrest, which assisted in proving the identification of the defendant, and a method of operation.
The admission of probative evidence, such as this, is prejudicial to a defendant, as it tends to establish the defendant’s guilt. See State v. Fisher, 09-1187, p. 8 (La.App. 4 Cir. 5/18/10), 40 So.3d 1020, 1025. However, as the Louisiana Supreme Court explained in State v. Humphrey, 412 So.2d 507, 520 (La.1981), the underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. State v. Williams, 02-645, p. 16 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 16507, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398; See also, Fisher, supra. Since the probative value of the evidence outweighed the unfair prejudice caused, we cannot find that the trial court abused its discretion in admitting the evidence of other crimes. Accordingly, we find no error or unfair prejudice in the trial court’s denial of the motion to sever the offenses and in admitting the other crimes evidence.

MOTION TO SUPPRESS STATEMENT

Third, the defendant avers that the trial court erred by denying his motion to suppress the statement. In support of his claim that the trial court erroneously admitted the statement, the defendant raises three issues relative to: 1) failing to give Miranda warnings; 2) failing to redact portions of the statement; and 3) admitting testimony not disclosed in discovery.
The Fourth Amendment to the United States Constitution and Article I, 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A defendant adversely affected may move to suppress any statement from use at the trial on the merits on the ground that it was unconstitutionally obtained. La. C.Cr.P. art. 703(A). A trial court’s ruling on a motion to suppress is entitled to great weight, considering the district court’s opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Robinson, 09-1269, p. 5 (La.App. 4 Cir. 5/12/10), 38 So.3d 1138, 1141, citing State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194. In reviewing a trial court’s sup.-pression ruling, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137 (citation omitted).
[ 17First, as to the Miranda warnings, at the hearing on the motion to suppress and at trial, Sergeant Williams *1093 testified that he travelled to Elaine Hunt Correctional Facility to interview the defendant, who was incarcerated on charges unrelated to these rape cases, and to obtain a buccal swab from him. He testified that he advised the defendant of his Miranda rights, and that the defendant waived his rights and agreed to give a recorded statement. During the interview, Sergeant Williams informed the defendant that his DNA matched the genetic profile developed from the sexual assault examination on V.M. from her 1992 rape. He showed the defendant a picture of-V.M. The defendant denied knowing her, and he said that it was not possible that his DNA could be connected to V.M. because he did not know her. On two occasions, Sergeant Williams is heard on the tape telling the defendant that he would have to explain the presence of his DNA to the jury. He also recounted that later on in the interview, as he was leaving the interview room, the defendant told him that “he didn’t have time for this” because “these people [the Department of Corrections] are about to let me go. I’m going home soon.”
The defendant maintains there is no proof that he was read his Miranda rights prior to giving his statement. He asserts there is no evidence on the tape that Williams gave him verbal Miranda warnings, or that Sergeant Williams took or used a waiver of rights form.
When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the [S]tate shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement. Likewise, the testimony of the interviewing police officer alone may be sufficient to prove that a defendant’s statement was given freely and voluntarily. La. C.Cr.P. art. 703.
18State v. Hankton, 12-466, p. 13 (La.App. 4 Cir. 4/30/14), 140 So.3d 398, 407. A trial court’s determination of whether Miranda rights were “knowingly and intelligently” waived should not be overturned on appeal absent a finding that the trial court abused its discretion. State v. Vigne, 01-2940 (La.6/21/02), 820 So.2d 533 (citation omitted).
At the hearing on the motion to suppress and at trial, Sergeant Williams testified under oath that he informed the defendant that he had the right to remain silent; anything he said, could and would be held against him in a court of law; he had a right to an attorney, and if he could not afford one, the court would supply an attorney for him. He further testified that the defendant understood his rights and chose to give a statement. Under these circumstances, the trial judge did not abuse her discretion by concluding that the defendant validly waived his Miranda rights, especially when considering there is no evidence to the contrary.
Second, the defendant’s assertion that portions of the statement should have been redacted mid-trial, is unpersuasive. The defendant cites no case law or statutory authority for such action. The notion that portions of Sergeant Williams’ comments during the interview — that the defendant would have, to explain the presence of his DNA to the jury — were an inappropriate comment on the defendant’s failure to testify at trial and should have resulted in mistrial pursuant to La.C.Cr.P. art. 770(3) is also groundless. It is well-established that a police officer is not a “court official” for purposes of article 770, “and, absent a showing of a pattern of unresponsive answers or improper intent by the prosecutor, a mistrial is not warranted.”
*1094 State v. Jones, 07-533, p. 4 (La.App. 4 Cir. 12/28/07), 975 So.2d 73, 77. The comments made by Sergeant Williams in the statement were not solicited by the State.
| ^Finally, the defendant avers that the trial court impermissibly allowed Sergeant Williams to testify at trial concerning the defendant’s comment that he would be getting out of jail soon because that comment was not contained in the recorded statement, and the State failed to disclose the comment during discovery.
Louisiana’s criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to meet the state’s case, and to allow a proper assessment of the strength of its evidence in preparing a defense. La. C.Cr.P. arts. 716-729; State v. Toomer, 395 So.2d 1320 (La.1981); State v. Statum, 390 So.2d 886, 889-890 (La.1980), cert. denied, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 619 (1981). When the defendant is lulled into a misapprehension of the strength of the state’s case through the prosecution’s failure to disclose timely or fully and the defendant suffers prejudice when the undisclosed evidence is used against him, basic unfairness results which constitutes reversible error. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. Davis, 399 So.2d 1168 (La.1981); State v. Meshell, 392 So.2d 433 (La.1980).
State v. Allen, 94-2262 (La.11/13/95), 663 So.2d 686, 688.
Mistrial is only one of several remedies provided by La.C.Cr.P. art. 729.5 for discovery violations; a trial court may also grant a continuance or prohibit introduction of the evidence not disclosed in a timely manner. Id. It is within a trial court’s discretion to exclude evidence or enter any appropriate order to remedy a party’s violation of a discovery right. State v. Bourque, 96-0842 (La.7/1/97), 699 So.2d 1, cert. denied, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998).
State v. Lee, 00-2429, p. 19 (La.App. 4 Cir. 1/4/01), 778 So.2d 656, 666.
La.C.Cr.P. art. 716(B) and (C) provide for the State’s disclosure of oral statements made by defendants when the State intends to offer it in its case in chief at trial.[9] At trial, the State recalled Sergeant Williams to discuss the defendant’s | gnoral statement. At that time, Sergeant Williams stated that after the recorded statement had ended, the defendant stated that he “did not have time for this,” because “[t]hese people are about to let me go. I am going home soon.” Sergeant Williams then indicated that he was referring to “eligibility for probation.” The defendant objected, complaining that he had no notice of this statement. The State responded that it had no intention of offering the statement until the defendant in *1095 troduced a minute entry regarding his thirty-five year sentence for the rape of R.G., and the trial court overruled the defendant’s objection.
The record reflects that the State recalled Sergeant Williams in response to evidence that the defendant would serve thirty-five years for his previous convictions. Although the State had included this minute entry in its own exhibit of the certified conviction packet, the record supports the conclusion that the State never intended to offer this information in its case in chief until the defendant drew attention to the minute entry. Thus, there was no discovery violation. Given these circumstances, we cannot say that the trial court abused its discretion in admitting the evidence.
Even assuming the trial court abused its discretion in admitting the evidence, the defendant suffered no misapprehension of the strength of the State’s case because he was provided with the DNA test results. In State v. Miller, 490 So.2d 486 (La.App. 4 Cir.1986), this Court held that where the defendant is not prejudiced by the omission, or if other evidence against him is overwhelming, admission of statements which should have been revealed in pre-trial discovery is ^harmless error. Likewise, in this case, the defendant was not prejudiced by the omission, and the evidence against the defendant was so overwhelming that any error as to admission of the statement did not contribute to the verdict and therefore was harmless beyond any doubt.

RIGHT TO PRESENTA DEFENSE

As to the fourth assignment of error, the defendant alleges that his constitutional right to present a defense was violated by the trial judge’s refusal to al-low Darrin Hill to testify on behalf of the defense. The defendant claims he was denied the opportunity to present his version of the facts to the jury, i.e. that E.V. and her boyfriend Gwain Thompson both identified Mr. Hill as E.V.’s assailant, and the fact that his check book was left behind in the vehicle E.V. was raped in.
■ When the defense subpoenaed Mr. Hill to testify, his attorney notified the trial judge that he was not competent to testify as a witness. The State then filed a motion to exclude him as a witness on the basis of his alleged incompetency. The trial judge appointed a sanity commission consisting of Drs. Salcedo and Richoux to evaluate him, after which the judge held a hearing to determine Hill’s competency.
Dr. Salcedo testified he diagnosed Mr. Hill as suffering from schizoaffective disorder, and that he had been prescribed Ris-perdal and Lithium. The doctor noted, however, that he had a problem with medication compliance. Dr. Salcedo described Mr. Hill’s thought process as confused and disorganized. Further, he said Mr. Hill manifested loose associations such that he would give responses which bore no relationship to questions posed and spoke in neologisms — words l^that do not exist— classic symptoms of psychosis. Drs. Salce-do and Richoux also examined him in 1992[10] at the time of E.V.’s rape and opined that he:
... was so impaired and so psychotic and manic, that is what schizoaffective disorder is, a combination of schizophrenia and mania, that he was incapable of distinguishing right from wrong at the time of the-at the time frame involved. So, obviously, during the time frame in which the incident of which he was origi *1096 nally accused took place, he was grossly psychotic, more so than he is today...
La. C.E. art. 601 provides that “[e]very person of proper understanding is competent to be a witness except as otherwise provided by legislation.” Understanding, not age, is the test of whether any person shall be sworn as a witness. State v. Deutor, 02-1869, p. 6 (La.App. 4 Cir. 3/19/03), 842 So.2d 438, 442 (citation omitted). “A key determination to be made is whether the witness is able to understand the difference between truth and falsehoods.” Id., pp. 6-7, 842 So.2d at 442.
“Sanity in any general sense is not the test of competency, and a so-called insane person may testify if he is able to report correctly the matters to which he testifies and if he understands the duty to speak the truth.” State v. Edgar, 12-744, p. 19 (La.App. 4 Cir. 9/18/13), 140 So.3d 22, 36 (citing State v. Morris, 429 So.2d 111, 120 (La.1983)). On the basis of their 1992 examinations of Mr. Hill and the evaluation they performed for purposes of this trial, Drs. Salcedo and Richoux concluded that he could not testify with reliability regarding an incident that occurred in 1992. Since the record supports the trial court’s ruling, we find no abuse of discretion.
1 ^EXCESSIVE SENTENCE
In a final assignment, the defendant argues his life sentences without the possibility of parole are excessive when considering that he was seventeen years old in 1992 when the crimes against V.M. and E.V. were committed.[11] After considering the United States Supreme Court’s decision in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), which held that the Eighth Amendment precludes sentencing a juvenile to life imprisonment without the possibility of parole for commission of a non-homicide offense, we agree.
In State v. Shaffer, 11-1756 (La. 11/23/11); 77 So.3d 939, 942, the Louisiana Supreme Court held that appropriate remedy for illegal sentences of life imprisonment without parole for aggravated rape committed when defendants were under 18 years old was to delete parole eligibility restriction. See also La. R.S. 15:574.4(D), which provides that a juvenile defendant sentenced to life without parole for a non-homicide offense is eligible for parole consideration after serving thirty years of that life sentence.
Finding that the district court erred in part by sentencing the defendant to two life sentences without the possibility of parole on the aggravated rape and aggravated kidnapping convictions, we amend the defendant’s sentences on Counts III an IV to delete the restrictions on parole eligibility. The Department of Corrections is directed to revise the defendant’s prison masters to reflect that his sentences are no longer without benefit of parole. Further, the Department is directed to revise the defendant’s prison masters to reflect an eligibility date for ^consideration by the Board of Parole according to the criteria in La. R.S. 15:574.4(D).

CONCLUSION

Accordingly, the defendant’s convictions are affirmed. His sentences on Counts III and IV are amended to delete the parole restriction. The Department of Corrections is directed to revise the defendant’s prison masters to reflect that his sentences are no longer without benefit of parole. Further, the Department is directed to revise the defendant’s prison masters to reflect an eligibility date for consideration *1097 by the Board of Parole according to the criteria in La. R.S. 15:574.4(D).
AFFIRMED AS AMENDED WITH INSTRUCTIONS

. The defendant was previously charged with the aggravated rape and aggravated kidnapping of V.M. in case number 502-075. The State later entered nolle prosequi in that case.

. The victims’ initials will be used in this opinion. See La. R.S. 46:1844(W)(barring public disclosure of the names, addresses, or identities of crime victims under the age of eighteen years and of all victims of sex offenses, and authorizing use of initials, abbreviations, etc.).

. In the prior case, numbered 502-075, the trial court granted the State's motion regarding the other crimes evidence and also denied the defendant's motion to suppress statement. In this case, the trial court granted the State's motion to adopt the previous ruling. The State also noticed its intent to use the statement, previously admitted by the trial court.

. Before counsel filed a motion for new trial, the defendant filed a pro se motion for new trial; however, that motion reflects that it is a supplemental motion to any motion for new trial filed by counsel. Thus, the trial court’s denial of the motion for new trial concerns both the motion filed by counsel and the pro se supplement. The defendant does not assign any error related to the trial court's denial of the motion for new trial.

. Though this is the defendant's third assignment of error, it should be addressed first. State v. Hearold, 603 So.2d 731, 734 (La.1992).

. Before a discussion of the merits of this assignment, it must be noted that the trial court erred in its jury instructions concerning the definitions of rape, aggravated rape and the lesser included offense of forcible rape. The judge read the 2013 statutory definitions of those crimes, which included the component of oral sexual intercourse. The definition of rape as written in 1992, when the present offenses were committed, did not include oral sexual intercourse. Neither the State nor the defense object to the error on appeal. The definitions used herein for the offenses for which the defendant was convicted of are as they were written in 1992.

. Though the defendant contends that two male DNA profiles were generated from the vaginal swab contained in V.M.'s rape kit, there was only one profile recovered from a single male.

. State v. Layton, 14-1910, 168 So.3d 358, 359-360, (where the Louisiana Supreme Court recognized an amendment to La. C.E. art. 412.2 which changed the language from allowing evidence of other sexual offenses to allowing evidence of the commission of " 'another crime, wrong, or act involving sexually assaultive behavior or acts indicating a lustful disposition towards children.' ")

. La.C.Cr.P. art. 716(B) and (C) state:
B. Except as provided by Paragraph C of this Article, upon written motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature made by the defendant or any codefendant which the district attorney intends to offer in its case in chief at the trial, with the information as to when, where, and to whom such oral confession or statement was made. C. Upon written motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement made by the defendant or any codefendant which the state intends to offer in its case in chief at the trial, whether before or after arrest, in response to interrogation by any person then known to the defendant or the codefendant to be a law enforcement officer.

. Drs. Salcedo and Richoux also examined Mr. Hill in 1999 when he was tried for these crimes. They determined that he was insane.

. The defendant’s date of birth is October 26, 1974.